IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **AR-RAAFI NICHOLS**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | Civil No. **08-388-DRH** |
| ) | |
| **ROGER WALKER, JR., et al.**, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

Defendants Roger E. Walker, Jr., Roger D. Cowan and Butch Ellis are before the Court seeking dismissal of the complaint due to plaintiff Ar-Raffi Nichols' purported failure to exhaust administrative remedies before filing suit, as is required by 42 USC 1997e(a).  (Docs. 27 and 28).

Plaintiff Nichols, who is represented by appointed counsel, has filed a response (Doc. 29), to which the defendants filed a reply (Doc. 32).  An evidentiary hearing was conducted on December 8, 2009, in accordance with *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008).

This Report and Recommendation is respectfully submitted to Chief United States District Judge David R. Herndon pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

## The Amended Complaint

An understanding of the amended complaint is helpful to analyzing the subject motion. Plaintiff's amended complaint (Doc. 15) alleges that, while he was housed at Menard

1

Correctional Center, the defendant prison officials[1] were deliberately indifferent to plaintiff's serious medical needs. More specifically, it is alleged that on December 23, 2005, plaintiff was served and then ate a fish patty that contained glass, resulting in two broken teeth, cuts to his tongue and the roof of his mouth, bleeding and pain. Defendant Ellis and an unidentified guard supposedly ignored plaintiff's request for medical attention.

According to plaintiff, he was taken to the prison Health Care Unit 40 minutes after the incident, where he was seen by a nurse, not a doctor or dentist. Plaintiff was given Tylenol and told to report if he discovered blood in his stool. (Plaintiff deems the medical care to be deliberate indifference, but no named defendant was specifically involved in administering care.) Plaintiff further alleges that he spent two months trying to obtain proper care, to no avail; all the while suffering pain. Plaintiff further asserts that he made oral and written request to "the defendants" and other prison employees for treatment, but nothing was done. According to plaintiff, he ultimately suffered nerve damage and had to have a tooth extracted on or about February 23, 2006– all of which could have been prevented by prompt, proper treatment. The defendants are sued in their official and individual capacities for compensatory and punitive damages.

## The Exhaustion Requirement

Plaintiff's claims are subject to the exhaustion requirement set forth in 42 U.S.C. § 1997e(a):

---

[1] During the relevant time period, Roger E. Walker, Jr., was the Director of the Illinois Department of Corrections; Roger D. Cowan was Warden at Menard Correctional Center; and Butch Ellis was the Food Supervisor at Menard Correctional Center. (*See* Doc. 15, p. 2; and Doc. 25, p. 1).

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir.1999), clarified that exhaustion of administrative remedies under § 1997e(a)– while not jurisdictional *per se*– is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. The exhaustion requirement applies to all claims "about prison life." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

Significantly, exhaustion of administrative remedies is required *before* a case may be brought, even if exhaustion is accomplished during pendency of the case. *See* 42 U.S.C. § 1997e(a); *Perez,* 182 F.3d at 535-536. In other words, an inmate cannot file suit and then exhaust his administrative remedies while suit is pending. *Ford v. Johnson,* 362 F.3d 395, 398 (7th Cir. 2004). The Supreme Court has held that exhaustion means "proper exhaustion," that is, the inmate must file a timely grievance using the procedures put in place by the prison system, properly taking each step in the process. *Woodford v. Ngo,* 548 U.S. 81 (2006); *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002). And the law of the Seventh Circuit emphasizes that the purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims administratively/internally, prior to federal litigation. Only when that is done has the prisoner properly exhausted all available remedies. *See, e.g., Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006); *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *see also Porter v. Nussle,* 534 U.S. 516, 524-525(2002).

Illinois Department of Corrections regulations regarding the procedures inmates must follow are set forth at Illinois Administrative Code § 504.810 *et seq*. Those procedures first require an inmate to attempt to resolve grievances through his counselor. 20 Ill. Admin. Code § 504.810(a). If that step is unsuccessful, the inmate may file a written grievance on a specified form within 60 days of discovery of the incident or problem giving rise to the grievance unless good cause can be shown for extending that period. *Id.* The grievance form must be addressed to the grievance officer and "deposited in the living unit mailbox or other designated repository." 20 Ill. Admin. Code § 504.810(b). The grievance should "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.*

The grievance officer provides the initial review of grievances. 20 Ill. Admin. Code § 504.830(a). If the grievance is found to have no merit, the regulations (20 Ill. Admin. Code § 504.830(d)) direct the grievance officer to consider the grievance and report findings and recommendations to the highest ranking official of a correctional facility, i.e. the warden. (20 Ill. Admin. Code § 504.802). The warden then advises the inmate of his or her decision within two months where reasonably feasible. 20 Ill. Admin. Code § 504.830(d).

If the inmate is not satisfied with the warden's decision, he may appeal in writing to the director of the Illinois Department of Corrections within 30 days. 20 Ill. Admin. Code § 504.850(a). After reviewing the grievance and the responses by the grievance officer and the warden, the director decides whether the grievance: (a) requires a hearing before the Administrative Review Board ("ARB"); (b) is without merit; or (c) can be resolved without a hearing. 20 Ill. Admin. Code § 504.850(b). If the grievance proceeds to a hearing, the ARB

submits a written report to the director who reviews the findings and recommendations of the ARB and makes a final determination within six months. 20 Ill. Admin. Code § 504.850(b)-(f).

Failure to exhaust administrative remedies is an affirmative defense; the defendant correctional officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004). A remedy is "available" if the administrative procedure can lead to some relief, even if it is not the precise relief the inmate wants. *See Booth v. Churner,* 532 U.S. 731, 741 and f n. 6 (2001); *Larkin v. Galloway,* 266 F.3d 718, 723 (7th Cir. 2001). "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use *affirmative misconduct* to prevent a prisoner from exhausting." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (emphasis added) (citing *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); and *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004).

In *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008), the Seventh Circuit delineated a three-step process for cases in which exhaustion is contested.

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even

informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.**

## The Arguments Presented

According to the amended complaint, before filing suit, plaintiff "exhausted all administrative procedures available to him using the prison grievance procedure." (Doc. 15, p. 2, ¶ 9). However, the defendants argue that plaintiff failed to exhaust administrative remedies, as required by 42 USC 1997e(a), in that:

1. Plaintiff's April 30, 2006, grievance[2] was denied at the institutional level as untimely, having been lodged more than 60 days after discovery of the incident or problem;

2. No appeal to the ARB was pursued– the final required step in the administrative process (*see* Affidavit of ARB chairperson Brian Fairchild, (Doc. 28-1)); and

3. Plaintiff's grievance does not mention the defendants by name, or specifically grieve the issue of medical care or treatment.

(Docs. 27 and 28).

Plaintiff opposes the defendants' motion. (Docs. 29 and 30). Plaintiff argues that remedies were "unavailable" because plaintiff was never informed of the grievance procedures

---

[2]Plaintiff's original complaint included a copy of a grievance dated April 30, 2006, which seeks monetary damages for injuries sustained on or about December 23, 2005, as a result of eating a fish patty containing glass. (Doc. 1, p. 14). The grievance states that plaintiff obtained the fish patty from the dietary services line, that he had to go to the health care unit, and that he places his life and health in the hands of Dietary Services every time he eats a meal, but no individuals are mentioned in the grievance. *Id*. According to plaintiff's affidavit, his one and only attempt at filing a grievance was on April 30, 2006. (Doc. 30-2, p. 2 ¶ 8).

by prison officials at intake, or at any other time. (Doc. 30-2, pp. 1-2). Inmates are supposed to be informed of the grievance process, and they may request additional information from their counselor. 20 Ill. Admin. Code § 504.810(d). According to plaintiff's written response and his affidavit, he was unaware of the grievance requirement and process until late April 2006, at which time a fellow inmate informed him of the grievance requirement. (Doc. 30-2, p. 2). According to plaintiff's affidavit, no one ever told him of the specific requirements of the grievance process. (Doc. 30-2, p. 2).

In reply, defendants submitted documentation establishing that between January 15 and March 23, 2006 (before the April 30, 2006, grievance process began, and before plaintiff allegedly learned about the grievance process from inmate Shaw) plaintiff properly pursued a grievance through the entire administrative process– including submitting his appeal to the ARB. (Doc. 32). At the evidentiary hearing, plaintiff testified that in January 2006 inmate Shaw drafted a grievance for him regarding tardy and opened "legal mail," which plaintiff later copied onto a form, submitted in January, 2006, and pursued all the way to the ARB. However, according to plaintiff's testimony, neither inmate Shaw nor plaintiff's counselor informed plaintiff of the applicable deadlines or the particularity requirement.

## Proposed Findings of Fact and Conclusions of Law

It is undisputed that plaintiff did not initiate a grievance until April 30, 2006, far outside the 60-day window prescribed by 20 Ill. Admin. Code § 504.810(a) for filing a grievance complete the prescribed grievance process. (Doc. 1, pp. 14-15). Therefore, this Court concludes that the grievance filed by plaintiff was untimely and properly denied by prison officials on that basis. *See Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002) ("To

exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). Furthermore, it is undisputed that plaintiff did not pursue his grievance through the full administrative process, in that he did not file an appeal to the ARB, which is the final required step. (20 Ill. Admin. Code § 504.850; Doc. 28-1, pp. 2-3). Thus, this Court concludes, that plaintiff did not exhaust the usual prescribed procedures. With all of that said, at issue in this case is whether the administrative remedies were rendered "unavailable."

Plaintiff argues that the prison's failure to inform him of the grievance procedures, as required by 20 Ill. Admin. Code § 504.810(d), rendered administrative remedies "unavailable." Plaintiff's argument rests on his testimony that he was unaware of the process until late April 2006, and then he was relying on the scant and partially incorrect information conveyed to him by a fellow inmate.

Prison officials bear the burden of establishing that administrative remedies were available to the prisoner-plaintiff. *See Kaba v. Stepp,* 458 F.3d 678, 686 (7th Cir. 2006). It is undisputed that the Illinois Department of Corrections utilizes the grievance procedure detailed above. Plaintiff equates knowledge of the process with availability. No evidence was presented showing that prison officials had informed plaintiff of the grievance procedures since his arrival in the system in November 2004, as required by 504.810(d). However, the Court does not find plaintiff credible regarding his lack of knowledge of the process and requirements. Plaintiff's affidavit and his oral testimony differed substantially regarding his knowledge of the grievance process and the requirements regarding timing and specificity. Plaintiff contended in his affidavit that he had <u>no</u> knowledge of the process and requirements, but when defendants

produced evidence that he had fully and appropriately utilized the process prior to April 2006, plaintiff changed his story. Essentially conceding that he had used the grievance process, plaintiff then testified that he merely copied and submitted what inmate Shaw had drafted. According to plaintiff's revised version of events, Shaw had misinformed him of deadlines and omitted the particularity requirement. However, plaintiff met all deadlines and requirements relative to his January 2006 grievance (Doc. 32-1, pp. 2-5). During the evidentiary hearing, the Court perceived plaintiff to be articulate and relatively intelligent– so much so that it is virtually impossible to believe plaintiff had utilized every step in the administrative process for his January grievance without appreciating what he was doing. The grievance form itself reveals the 30-day deadline for filing an appeal to the ARB, which is the step plaintiff failed to take relative to his April 2006, grievance. Therefore, this Court concludes that plaintiff was aware of the process and requirements for exhausting administrative remedies, and his failure to timely and fully pursue a grievance regarding the issues raised in this action cannot be excused.

If the District Court were to accept plaintiff's assertions regarding his lack of knowledge of the grievance process and requirements, there remains a legal question regarding whether 42 USC 1997e(a) requires prison authorities to ensure that prisoners are made aware of the process and specific requirements. As noted above, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use *affirmative misconduct* to prevent a prisoner from exhausting." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (emphasis added) (citing *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); and *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004). However, *Dole* only refers to "affirmative misconduct." There is

no evidence of any affirmative misconduct in the case at bar.

The Court of Appeals for the Eighth Circuit has observed: "[42 U.S.C. §] 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." *Chelette v. Harris,* 229 F.3d 684, 688 (8th Cir. 2000); *see also Yousef v. Reno,* 254 F.3d 1214, 1221 (10th Cir. 2001) (assistant attorney general's response to prisoner's informal complaint had no duty to inform prisoner of prison's formal grievance procedures).

In *Koba v. Stepp*, 458 F.3d 678 (7th Cir. 2006), the Court of Appeals for the Seventh Circuit analyzed "availability" and stated:

> [W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited. On the other hand, when prison officials prevent inmates from using the administrative process *detailed in the Code of Federal Regulations*, the process that exists on paper becomes unavailable in reality.

*Id.* at 684 (emphasis added). The appellate court also reiterated its statement in *Dole v. Chandler*, that prison officials may not take unfair advantage of the exhaustion requirement, and that unavailability was triggered by "affirmative misconduct." *Id*. at 685. In the situation at bar, the grievance procedures, specificity requirements and deadlines were all available in the Illinois Administrative Code. Ignorance of the law cannot be used to avoid a procedural prerequisite. *See, e.g., Godoski v. U.S.*, 304 F.3d 761, 762 (7th Cir. 2002), and *Wilson v. Battles*, 302 F.3d 745 (7th Cir. 2002) (relative to statute of limitations period for filing a petition for writ of habeas corpus); and *Redfield v. Continental Casualty Corp*., 818F.2d 596, 602 (7th Cir. 1987) (relative to

deadline for filing an appeal). Thus, this Court would again conclude that plaintiff failed to exhaust available administrative remedies.

In the event the District Court concludes administrative remedies were unavailable, the sufficiency of plaintiff's attempt to exhaust administrative remedies would become moot. Nevertheless, for the sake of a thorough analysis, this Court will address defendants' argument that the grievance plaintiff filed did not "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint," as required by 20 Ill. Admin. Code § 504.810(b). A state may enact regulations requiring "factual particularity" in a grievance. *Strong v. David*, 297 F.3d 646, 649-650 (7th Cir. 2002). As explained above, the purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. That purpose is thwarted if an inmate is permitted to include in his federal complaint prison officials not named or issues not raised in his prison grievance.

Plaintiff's grievance does not mention any of the defendants by name. Plaintiff does state that he received the fish patty from the dietary service line, and that he feels he risks his life and heath at the hands of dietary services every time he eats a prison meal. The grievance also states that plaintiff was taken to the health care unit after eating the fish patty containing glass, but no details of treatment or lack thereof are set forth. (Doc. 1, p. 14). Consequently, this Court would conclude that the grievance itself was lacking in the required factual particularity and, therefore, even if the full process had been completed, the grievance could not serve to exhaust remedies relative to the defendants and claims presented in the federal complaint.

## Recommendation

Fore the aforementioned reasons, it is the undersigned Magistrate Judge's recommendation that the defendants' motion for summary judgment (Doc. 27) be granted and that this action be dismissed without prejudice, due to plaintiff's failure to exhaust administrative remedies, as required by 42 USC 1997e(a).

**DATED: December 15, 2009**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**

## Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b), Local Rule 73.1(b), and Federal Rule of Civil Procedure 6, the parties shall file any objections to this report and recommendation on or before **January 4, 2010**.